**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHESAPEAKE EXPLORATION, L.L.C.,[1] | ) | Case No. 20-33239 (DRJ) |
| | ) | |
| Reorganized Debtor. | ) | (formerly Jointly Administered under |
| | ) | Lead Case Chesapeake Energy |
| | ) | Corporation, Case No. 20-33233) |
| | ) | |
| | ) | |

**REORGANIZED DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) ENFORCING
THE CONFIRMATION ORDER AND PLAN AGAINST THE REORGANIZED
DEBTORS; AND (II) DECLARING THE MEC SETTLEMENT AND THE NON-MEC
SETTLEMENT NULL AND VOID**

---

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

The above-captioned reorganized debtors (collectively, the "Reorganized Debtors" or "Chesapeake")[2] state the following in support of this motion ("Motion"):

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/chesapeake. The location of Debtor Chesapeake Energy Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 6100 North Western Avenue, Oklahoma City, Oklahoma 73118.

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Domenic J. Dell'Osso, Jr., Executive Vice President and Chief Financial Officer of Chesapeake Energy Corporation in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 37], filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on June 28, 2020 (the "Petition Date"). Unless otherwise indicated, docket references in this Motion refer to the docket of *In re Chesapeake Energy Corporation, et al.*, Case No. 20-33233 (Jointly Administered) (Bankr. S.D. Tex. Nov. 13, 2020).

**Preliminary Statement**

1.      In June 2020, Chesapeake filed for relief under chapter 11 of the Bankruptcy Code. At that time, Chesapeake was a defendant in three related lawsuits regarding oil and gas lessors, all then-pending before Judge Mannion in the Middle District of Pennsylvania ("Pennsylvania District Court")—the PA AG litigation, the MEC class action and the Non-MEC class action (each defined herein).   During proceedings before this Court, the parties presented the PA AG Settlement, MEC Settlement and Non-MEC Settlement (each defined herein) for approval.  As the litigations were related, the relief agreed to in the settlements was consistent and harmonized.  The settlements provided the royalty owners the opportunity to select a royalty formula to pay royalties going forward to reset the relationship (the elections offered in the PA AG Settlement were mirrored in the MEC Settlement and Non-MEC Settlement) and a payment for alleged prior royalty underpayments (one payment for the PA AG Settlement; one payment for the MEC Settlement; and one payment for the Non-MEC Settlement).  At the parties' request and after full briefing and hearings, the Court approved the three settlements.

2.      In March 2021, the PA AG Settlement was approved and implemented. Pennsylvania royalty owners (including putative MEC and Non-MEC class members) were given the opportunity to select how they would like to have their royalties paid going forward, and the settlement amount was distributed to royalty owners by the Pennsylvania Attorney General.  Since the Effective Date of the Plan of Reorganization (each defined herein), Chesapeake has been paying royalty owners pursuant to the formulas elected.

3.      One MEC class member (Lillian Sarnosky) objected to the MEC Settlement and one Non-MEC class member (Charlene Walters) objected to the Non-MEC Settlement.  Those two class members appealed to the District Court (which affirmed the settlement approvals) and then

to the Fifth Circuit (which reversed and vacated the settlement approvals).  Before the District Court and the Fifth Circuit, the parties and Chesapeake opposed the objections and sought to have the MEC Settlement and Non-MEC Settlements approved and implemented.  Ultimately, the Fifth Circuit ruled that there was no jurisdiction to approve the MEC Settlement and Non-MEC Settlement, and that alleged royalty underpayment claims before the Effective Date were discharged (and that only those royalty owners that filed Proofs of Claim could seek relief in the Bankruptcy Court).[3]  *See In re Chesapeake Energy Corp.*, 70 F.4th 273 (5th Cir. 2023).

4.      Since that time, the parties and Chesapeake have discussed how to deal with the still pending (but stayed) MEC and Non-MEC cases in the Pennsylvania District Court.  That court has since ordered the parties to submit their positions by August 4, 2023.  Chesapeake's position is that any legal claims seeking relief before the Effective Date must be dismissed (any claims filed in this Court related to Pre-Effective Date claims will be resolved or litigated in this Court) and that there are no legitimate claims for royalty underpayment after the Effective Date, because Chesapeake is paying royalty owners pursuant to the royalty owner elections.  Accordingly, Chesapeake brings this motion to seek confirmation of its position related to Pre-Effective Date claims and related relief.

5.      In addition to the MEC and Non-MEC cases, three other plaintiffs groups assert claims for alleged underpaid royalties before Judge Mannion in the Pennsylvania District Court: the *A & B Campbell* Litigation, the *Burkett* Litigation, and the *Tyler* Litigation (each defined herein and together with the MEC and Non-MEC Litigation, the "Pennsylvania Royalty Cases[4]").

---

[3]    It is worth noting that based on Ms. Sarnosky's appeal and her apparent failure to file a Proof of Claim, her claims related to royalty underpayment before the Effective Date were discharged, and she has no avenue to seek relief for such claims.

[4]    The Pennsylvania Royalty Cases are: *Demchak Partners Ltd. Partnership v. Chesapeake Appalachia, L.L.C.*, No. 3:13-cv-02289-MEM (M.D. Pa. filed Aug. 30, 2013); *Brown v. Access Midstream Partners, L.P.*, No. 3:14-cv-00591-MEM (M.D. Pa. filed Mar. 28, 2014); *Suessenbach Family Ltd. Partnership v. Access Midstream Partners,*

6.     The Reorganized Debtors specifically request two forms of relief.  First, the Reorganized Debtors seek entry of an order enforcing the Confirmation Order (defined herein) and Plan against the plaintiffs in the Pennsylvania Royalty Cases as to their pre-Effective Date royalty and Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against the Reorganized Debtors.  Second, the Reorganized Debtors request a declaration that the MEC Settlement and the Non-MEC Settlement are null and void.

## Relief Requested

7.     The Reorganized Debtors seek entry of an order, substantially in the form attached hereto ("Order"): (a) enforcing the Confirmation Order and Plan with respect to the continued prosecution by the plaintiffs in the Pennsylvania Royalty Cases of any pre-Effective Date claims against the Reorganized Debtors; (b) declaring that the MEC Settlement and the Non-MEC Settlement are null and void; and (c) granting related relief.

## Jurisdiction and Venue

8.     The United States Bankruptcy Court for the Southern District of Texas has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Reorganized Debtors confirm their consent to the entry of a final order by the Court.

9.     The Court retains jurisdiction to enforce the provisions of the Confirmation Order and Plan, as well as any prior orders.

10.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

*L.P.*, No. 3:14-cv-01197-MEM (M.D. Pa. filed June 20, 2014); *A & B Campbell Family, et al., v. Chesapeake Energy Corporation, et al.*, Case No. 3:15-340 (M.D. Pa. filed Feb. 17, 2015); *Burkett, et al. v. Chesapeake Energy Corporation, et al.*, American Arbitration Association No. 14 115 436 13 (filed Apr. 1, 2013); *Tyler, et al., v. Chesapeake Appalachia, L.L.C., et al.*, Case No. 3:16-cv-456 (M.D. Pa. filed Mar. 15, 2016).

11.     The bases for the relief requested herein are sections 105(a), 524, and 1141 of the Bankruptcy Code, the Plan, and the Confirmation Order.

## Background

### I.     The Pennsylvania Royalty Cases

#### A.   The *Demchak* Litigation

12.     The *Demchak* plaintiffs, as lessors, and Chesapeake Appalachia, L.L.C., as lessee, are parties to oil and gas leases governing leaseholds in Pennsylvania.  The *Demchak* leases contain a "Market Enhancement Clause" ("MEC").  On August 30, 2013, the *Demchak* plaintiffs initiated a lawsuit against Chesapeake Appalachia, L.L.C. on behalf of a putative class of oil and gas lessors in Pennsylvania, whose leases contained an MEC.  The lawsuit is styled as *Demchak Partners Ltd. Partnership v. Chesapeake Appalachia, L.L.C.*, No. 3:13-cv-02289-MEM (M.D. Pa. filed Aug. 30, 2013) (the "*Demchak* Litigation").  The *Demchak* plaintiffs allege that Chesapeake, among other things, underpaid royalties by improperly deducting post-production costs, pursuant to the MEC. *See* Class Action Compl. [*Demchak* Docket No. 1] (the "*Demchak* Complaint").[5]

#### B.   The *Brown-Suessenbach* Litigation

13.     The *Brown-Suessenbach* plaintiffs, as lessors, and Chesapeake Appalachia, L.L.C., as lessee, are parties to oil and gas leases governing leaseholds in Pennsylvania.  The *Brown-Suessenbach* leases do not have a Market Enhancement Clause ("Non-MEC").  On March 28, 2014, the *Brown* plaintiffs initiated a lawsuit against Access Midstream Partners, L.P., Chesapeake Energy Corp., and Domenic J. Dell'Osso, Jr., on behalf of a putative class of oil and gas lessors in Pennsylvania.  *See* Class Action Compl. [*Brown* Docket No. 1]; *see also* Am. Class Action Compl. [*Brown* Docket No. 57] ("*Brown* Amended Complaint").  The lawsuit is styled as *Brown v. Access*

---

[5]     Chesapeake denies those claims and further denies that its royalty payment practices are or were improper.

*Midstream Partners, L.P.*, No. 3:14-cv-00591-MEM (M.D. Pa. filed Mar. 28, 2014) (the "<u>*Brown*</u> <u>Litigation</u>").   On June 20, 2014, the *Suessenbach* plaintiffs initiated a similar lawsuit against Access Midstream Partners, L.P. and Chesapeake Energy Corporation.  *See* Class Action Compl. [*Suessenbach* Docket No. 1] ("<u>*Suessenbach* Complaint</u>").  The lawsuit is styled as *Suessenbach Family Ltd. Partnership v. Access Midstream Partners, L.P.*, No. 3:14-cv-01197-MEM (M.D. Pa. filed June 20, 2014) (the "<u>*Suessenbach* Litigation</u>").  Both the *Brown* and *Suessenbach* plaintiffs allege that Chesapeake, among other things, underpaid royalties by improperly deducting inflated post-production costs and engaged in a purported scheme with Access Midstream Partners, L.P. to charge landowners artificially inflated and supra-competitive rates for certain post-production services.[6]

### C.  The *A & B Campbell* Litigation

14.     The *A & B Campbell* plaintiffs, as lessors, and Chesapeake Appalachia, L.L.C., as lessee, are parties to oil and gas leases governing leaseholds in Pennsylvania.  On February 17, 2015, the *A & B Campbell* plaintiffs initiated a lawsuit against, *inter alia*, Chesapeake Energy Corporation, Chesapeake Appalachia, L.L.C., and Chesapeake Exploration, L.L.C.  *See* Compl. [*A & B Campbell* Docket No. 1]; *see also* Am. Compl. [*A & B Campbell* Docket No. 94] ("<u>*A & B Campbell* Amended Complaint</u>").  The lawsuit is styled as *A & B Campbell Family, et al., v. Chesapeake Energy Corporation, et al.*, Case No. 3:15-340 (M.D. Pa. filed Feb. 17, 2015) ("<u>*A & B Campbell* Litigation</u>").  The *A & B Campbell* plaintiffs allege that Chesapeake, among other things, underpaid royalties by improperly deducting inflated post-production costs and engaged in

---

[6]    Chesapeake denies that post-production costs are or were inflated and further denies that its royalty payment practices are or were improper.

a purported scheme to charge landowners artificially inflated and supra-competitive rates for certain post-production services.[7]

### D. The *Burkett* Litigation

15.     The *Burkett* plaintiffs, as lessors, and Chesapeake Appalachia, L.L.C., as lessee, are parties to oil and gas leases governing leaseholds in Pennsylvania.  On April 1, 2013, the *Burkett* plaintiffs initiated an arbitration against Chesapeake Energy Corporation, Chesapeake Appalachia, L.L.C., and Chesapeake Energy Marketing, Inc.  *See* Compl. [Case No. 3:13-cv-3073, Docket No. 2] ("*Burkett* Complaint").   The arbitration is styled as *Burkett, et al. v. Chesapeake Energy Corporation, et al.*, American Arbitration Association No. 14 115 436 13 (filed Apr. 1, 2013) ("*Burkett* Litigation").  On December 20, 2013, Chesapeake Appalachia, L.L.C. initiated an action in the Middle District of Pennsylvania before Judge Mannion, seeking a declaration that the Pennsylvania District Court should decide issues of class arbitrability and that the *Burkett* plaintiffs may not proceed in the arbitration on a class basis.  The lawsuit is styled as *Chesapeake Appalachia, L.L.C. v. Russell Burkett, et al.*, Case No. 3:13-cv-3073 (M.D. Pa. 2015).  In the *Burkett* Litigation, the plaintiffs allege that Chesapeake, among other things, underpaid royalties by improperly deducting inflated post-production costs.[8]

16.     On January 28, 2014, the arbitration panel ruled that it has the authority to decide whether the arbitration may proceed on a class basis, and, on September 11, 2014, the arbitration panel ruled that the arbitration may proceed on a class basis.  [Case No. 3:13-cv-3073,  Docket Nos. 25-2, 39-2].  Chesapeake moved to vacate those rulings in the Pennsylvania District Court

---

[7]     Chesapeake denies that post-production costs are or were inflated and further denies that its royalty payment practices are or were improper.

[8]     Chesapeake denies that post-production costs are or were inflated and further denies that its royalty payment practices are or were improper.

on September 16, 2014.  [Case No. 3:13-cv-3073,  Docket No. 39].  Chesapeake's motion was denied by the District Court on October 17, 2014.  Order [Case No. 3:13-cv-3073,  Docket No. 46].  Chesapeake appealed the court's ruling to the United States Court of Appeals for the Third Circuit on October 27, 2014.  *Chesapeake Appalachia, L.L.C. v. Russell Burkett, et al.*, Case No. 14-4311 (3d Cir.).  On January 12, 2015, this appeal was stayed pending approval of a proposed settlement in the *Demchak* matter, [Case No. 14-4311, Docket No. 003111846576], and, following Chesapeake's Notice of Suggestion of Bankruptcy, that stay was reaffirmed on September 18, 2020, [Case No. 14-4311, Docket No. 126].

### E.  The *Tyler* Litigation

17.     The *Tyler* plaintiffs, as lessors, and Chesapeake Appalachia, L.L.C., as lessee, are parties to oil and gas leases governing leaseholds in Pennsylvania.  On March 15, 2016, the *Tyler* plaintiffs initiated a lawsuit against Chesapeake Appalachia, L.L.C., Chesapeake Energy Corporation, and Chesapeake Energy Marketing, L.L.C.  *See* Compl. [*Tyler* Docket No. 1] ("*Tyler* Complaint").  The lawsuit is styled as *Tyler, et al., v. Chesapeake Appalachia, L.L.C., et al.*, Case No. 3:16-cv-456 (M.D. Pa. filed Mar. 15, 2016) ("*Tyler* Litigation").  The *Tyler* plaintiffs allege that Chesapeake, among other things, underpaid royalties by improperly deducting inflated post-production costs.[9]

\*     \*     \*

18.     Since the February 9, 2021 settlement with the Pennsylvania Attorney General's Office (described herein), Chesapeake has been offering the plaintiffs in the Pennsylvania Royalty Cases the opportunity to have their royalties paid at the in-basin or the netback price.  Thus, all

---

[9]     Chesapeake denies that post-production costs are or were inflated and further denies that its royalty payment practices are or were improper.

claims in the Pennsylvania Royalty Cases are premised on alleged conduct that pre-dates the February 9, 2021 settlement (which occurred on the Effective Date), and there are no pending claims against the Reorganized Debtors based on their new royalty payment methodology.

## II.  The Pennsylvania Attorney General Litigation

19.     On December 9, 2015, the Commonwealth, through the Pennsylvania Attorney General, initiated its own state-court lawsuit styled *Commonwealth of Pennsylvania v. Chesapeake Energy Corporation*, No. 2015IR0069 (the "PA AG Litigation"), in the Bradford County, Pennsylvania Court of Common Pleas against, *inter alia*, Chesapeake Energy Corporation, Chesapeake Appalachia, L.L.C., Chesapeake Operating, Inc., and Chesapeake Energy Marketing, Inc., seeking substantially similar royalty-related relief as to the *Demchak* and *Brown-Suessenbach* plaintiffs.    The Pennsylvania Attorney General filed a Second Amended Complaint on May 3, 2016, alleging that Chesapeake violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law and Pennsylvania antitrust common law through unfair and/or deceptive acts or practices concerning inflated midstream prices, leasing practices at the formation and post-formation stages, improper deductions from royalty payments, and an undisclosed market allocation agreement in the Marcellus Shale.[10]

## III.  The Chapter 11 Cases

20.     On June 28, 2020, the Debtors filed for relief under chapter 11 of the Bankruptcy Code.

21.     On December 28, 2020, the Pennsylvania Attorney General filed Claim Nos. 4672, 4673, 4675, and 4683 related to the PA AG Litigation.

---

[10]   Chesapeake denies the Commonwealth's allegations as a factual matter and denies that the Commonwealth's allegations are cognizable as a legal matter.

22.     On January 12, 2021, the Debtors filed the *Fifth Amended Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and Its Debtor Affiliates* [Docket No. 2833] (the "Plan").

23.     On January 15, 2021, the Court confirmed the Plan, and on January 16, 2021, the Court entered an order memorializing that decision, *see Order Confirming Fifth Amended Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and Its Debtor Affiliates* [Docket No. 2915] (the "Confirmation Order").

24.     The Plan became effective on February 9, 2021 (the "Effective Date"). *See Notice of Entry of Order Confirming the Fifth Amended Joint Chapter 11 Plan of Reorganization of Chesapeake Energy Corporation and Its Debtor Affiliates* [Docket No. 3058].

### IV.     The Pennsylvania Attorney General Settlement

25.     On February 9, 2021, the Reorganized Debtors and the Pennsylvania Attorney General entered into a settlement with the Pennsylvania Attorney General [Docket No. 3175-2] (the "PA AG Settlement"). Under the terms of the PA AG Settlement, Pennsylvania oil-and-gas leaseholders may choose whether to have their royalties calculated based on the in-basin or the netback price. *See* PA AG Settlement § 3.3. The in-basin price is the average of two oil-and-gas price indexes, without deducting post-production costs. *See id.* §§ 2.4, 3.2.1. The netback price is the average sales price Chesapeake receives "for its production month sales to third parties minus a proportionate share" of post-production costs. *See id.* § 3.2.2. Chesapeake paid Pennsylvania $5,300,000, for the State to distribute to Pennsylvania leaseholders. *See id.* § 3.5.1.

26.     On March 5, 2021, Chesapeake moved for an order approving the PA AG Settlement [Docket No. 3175]. On March 31, 2021, the Court approved the PA AG Settlement [Docket No. 3371]. No appeal was taken from the Court's approval of the PA AG Settlement.

### V.        The MEC Settlement

27.        On March 3 2021, the Reorganized Debtors and the *Demchak* plaintiffs finalized a

settlement agreement [Docket No. 3175-3] (the "MEC Settlement").  Under the terms of the MEC

Settlement, Chesapeake would have paid $5,000,000 to class members.  *See* MEC Settlement

§ 1.39.  In addition, the MEC Settlement altered the future royalty formulas for the parties' leases

by allowing MEC class members to choose to have their royalties calculated each month based on

the higher of the in-basin index or netback price.  *See id.* § 6.3.  The MEC Settlement was expressly

conditioned on "approval of the [Bankruptcy] Court."  *See id.* at 2 (second introductory paragraph

& Recital F), 3 (Agreement paragraph).  Chesapeake and the *Demchak* plaintiffs reserved all rights

and defenses in the event that Court-approval was not obtained.  *See id.* at 2 (Recital E) & § 16.

The "Settlement Effective Date" was defined in a manner that required the Court's approval to

become a "Final Judgment," or—in the event that the Court's approval was appealed—resulted in

an affirmance.  *See id.* §§ 1.12, 1.13, 1.38.  The MEC Settlement contains a severability provision,

which permits either party "to dissolve" and "withdrawn from the Settlement," if "a court of

competent jurisdiction holds invalid or materially modifies any material provision."  *See id.* § 18.2.

28.        The parties used best efforts to obtain the Court's approval of the MEC Settlement.

On March 5, 2021, Chesapeake moved for an order approving the MEC Settlement [Docket No.

3175].  On March 31, 2021, the Court certified the MEC settlement classes and preliminarily

approved the MEC Settlement.  *See* Hr'g Tr. 52:2–58:23 [Docket No. 3386].  Chesapeake opposed

the appeal of the Court's approval to the District Court, [Case No. 4:21-cv-01215, Docket Nos.

29, 59], and sought approval of the MEC Settlement by the District Court, [Case No. 4:21-cv-

01215, Docket No. 47].  On August 23, 2021, the District Court approved the MEC Settlement

[Docket No. 3961].

## VI.     The Non-MEC Settlement

29.     On March 4, 2021, the *Brown-Suessenbach* plaintiffs finalized a settlement agreement [Docket No. 3175-4] (the "Non-MEC Settlement").  Under the terms of the Non-MEC Settlement, Chesapeake would have paid $1,250,000 to class members.  *See* Non-MEC Settlement §§ 1.43, 5.  In addition, the Non-MEC Settlement altered the future royalty formulas for the parties' leases by allowing Non-MEC class members to choose to have their royalties calculated each month based on the in-basin index or netback price.  *See id.* § 6.  Non-MEC class members could only make this election once; not each month.  *See id.*  The Non-MEC Settlement was expressly conditioned on "approval of the [Bankruptcy] Court."  *See id.* at 2 (second introductory paragraph & Recital F), 3 (Agreement paragraph).  Chesapeake and the *Brown-Suessenbach* plaintiffs reserved all rights and defenses in the event that Court-approval was not obtained.  *See id.* at 2 (Recital E) & § 15.  The "Settlement Effective Date" was defined in a manner that required the Court's approval to become a "Final Judgment," or—in the event that the Court's approval was appealed—resulted in an affirmance.  *See id.* §§ 1.13, 1.14, 1.42.  The MEC Settlement contains a severability provision, which permits either party "to dissolve" and "withdrawn from the Settlement," if "a court of competent jurisdiction holds invalid or materially modifies any material provision."  *See id.* § 17.2.

30.     The parties used best efforts to obtain the Court's approval of the Non-MEC Settlement.  On March 5, 2021, Chesapeake moved for an order approving the Non-MEC Settlement [Docket No. 3175].  Chesapeake opposed the appeal of the Court's approval to the District Court, [Case No. 4:21-cv-01215, Docket Nos. 29, 59], and sought approval of the Non-MEC Settlement by the District Court, [Case No. 4:21-cv-01215, Docket No. 47].  On March 31, 2021, the Court certified the Non-MEC settlement classes and preliminarily approved the Non-

MEC Settlement.  *See* Hr'g Tr. 52:2–58:23 [Docket No. 3386]; Order [Docket No. 3416].  On

August 23, 2021, the District Court approved the Non-MEC Settlement [Docket No. 3961].

**VII.    The Fifth Circuit Vacated Approval of the MEC and the Non-MEC Settlement Agreements**

31.    Following the District Court's approval of the MEC Settlement and the Non-MEC

Settlement, two putative class members appealed the District Court's order: Lillian Sarnosky (a

lessor with an MEC lease provision) and Charlene Walters (a non-MEC lessor).  *See* Appellant's

Br. [Case No. 21-20323, Docket No. 00516228215].  Chesapeake opposed the appeal and sought

to have the MEC Settlement and Non-MEC Settlements approved.  Chesapeake Br. [Case No. 21-

20323, Docket No. 00516297475].

32.    The Fifth Circuit vacated and remanded the District Court and this Court's approval

of the MEC Settlement and the Non-MEC Settlement.  *See In re Chesapeake Energy Corp.*, 70

F.4th 273 (5th Cir. 2023).  The Fifth Circuit held that the Court lacked jurisdiction to approve the

settlement agreements, under either "core" or "related to" jurisdiction.  *See id.* at 281–85.  First, it

held that the Court lacked core jurisdiction under 28 U.S.C. § 157(a)–(b).  *See id.* at 281–83.  It

found that because no proofs of claim were filed for any of the named plaintiffs, the vast majority

of landowners within the putative classes, or on behalf of either of the classes, those unfiled claims

were "disallowed and expunged" under the Plan, which defeated "core" jurisdiction.  *See id.* at

281; *see also id.* at 284 ("As to the non-filers, Chesapeake's pre-Effective Date debts for deficient

or improperly calculated royalties were discharged and 'expunged'; the claimants cannot resurrect

them, use them to invoke bankruptcy jurisdiction, and then lay them to rest via class settlements.").

The Fifth Circuit found that since these claims were not filed, allowing them to receive an

"enormous recovery windfall" under the proposed settlements, would "belie[] equal treatment

within th[e] creditor class."  *See id.* at 282.

33.     Second, the Fifth Circuit similarly held that the Court lacked "related to" jurisdiction under 28 U.S.C. § 1334(a)–(b).  *See id.* at 283–85.  Continuing its analysis of the unfiled proofs of claim, the Fifth Circuit found that "the vast majority of claimants in the *Demchak* and *Brown-Suessenbach* suits, unlike those few lessors who timely filed proofs of claim, ***have no recourse*** in bankruptcy court for their prepetition monetary claims."  *See id.* at 284 (emphasis added) (citing 11 U.S.C. § 1141(d)).  Therefore, the Fifth Circuit found, the unfiled proofs of claim "were discharged and 'expunged,'" and the class members "cannot resurrect them, use them to invoke bankruptcy jurisdiction, and then lay them to rest via class settlements."  *Id.*  Conversely, the Fifth Circuit found that "only the PAAG and the 161 individual leaseholders who filed timely Proofs of Claim were eligible to vote or receive any distributions on account of their money damage claims."  *See id.* at 278 (citation omitted).  As to post-Effective Date claims, the court held that these "are the only claims for which there is now a remedy," although the court noted that these "claims may well have been diminished by the PAAG settlement," under which Chesapeake "has been offering leaseholders the new royalty payment terms since February 2021 pursuant to the PAAG settlement."  *See id.* at 285 & n.10.

34.     Following the Fifth Circuit's opinion, on July 10, 2023, counsel for the *Demchak* plaintiffs stated their desire "to effectuate the MEC Class Action Settlement."  Counsel for the *Demchak* plaintiffs stated:

> [T]he MEC Class Action Settlement Agreement is a valid, binding, and enforceable agreement and should be submitted to the court for approval in *Demchak Partners Limited Partnership, et al. v. Chesapeake Appalachia, L.L.C.*, No. 3:13-cv-2289 on the docket of the United States District Court for the Middle District of Pennsylvania.

35.     On July 17, 2023, the Pennsylvania District Court ordered that the parties in the *Demchak* Litigation, *Brown* Litigation, *Suessenbach* Litigation, and *A & B Campbell* Litigation

"provide the court with the status of the . . . matter in light of the Fifth Circuit's opinion and the posture of the proceedings the Bankruptcy Court."  *See* Ex. A (Order) [*Demchak* Docket No. 236]; Ex. B (Order) [*Brown* Docket No. 210]; Ex. C (Order) [*Suessenbach* Docket No. 162]; Ex. D (Order) [*A & B Campbell*, Docket No. 170].  In response to the Pennsylvania District Court's orders, Chesapeake told counsel for the MEC plaintiffs that it would address the effect of the Fifth Circuit's decision on the MEC Settlement with this Court.  But on July 26, 2023, the *Demchak* plaintiffs filed a status report with the Pennsylvania District Court, stating, "Plaintiffs believe and will argue that the settlement agreement is binding and enforceable by [the Pennsylvania District Court].  Accordingly, Plaintiffs intend to file with [the Pennsylvania District Court] a motion for preliminary approval of the settlement and to enforce the agreement in the coming weeks."  *See* Ex. E (Pls.' Status Report) [*Demchak* Docket No. 237].

## Basis for Relief

I.     **The Confirmation Order and Plan Have Discharged, Released, and Enjoined the Plaintiffs' Pre-Effective Date Claims in the Pennsylvania Royalty Cases**

36.     The plaintiffs' pre-Effective Date claims in the Pennsylvania Royalty Cases were discharged by the Confirmation Order and Plan.  Article VIII.A of the Plan provides for a discharge of all Claims of any nature whatsoever arising prior to the Effective Date:

> Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created pursuant to the Plan, *the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever*, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been

distributed or retained pursuant to the Plan on account of such Claims and Interests, ***including demands, liabilities, and Causes of Action that arose before the Effective Date***, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, ***in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan***.

*See* Plan, Art. VIII.A (emphases added); *see also* Confirmation Order ¶ 91.

37.     The Plan further provides that "[t]he Confirmation Order shall be a judicial determination of the discharge of all Claims (other than the Reinstated Claims) and Interests (other than the Intercompany Interests that are Reinstated) subject to the occurrence of the Effective Date." *See* Plan, Art. VIII.A.

### A. The Plaintiffs in the Pennsylvania Royalty Cases Assert Claims Within the Meaning of Section 101(5) of the Bankruptcy Code

38.     The plaintiffs in the Pennsylvania Royalty Cases have asserted "claims" within the meaning of "claim" as defined in section 101(5)(A) of the Bankruptcy Code and the Plan. Specifically, the plaintiffs seek damages for alleged underpaid royalties stemming from improperly deducting post-production costs, pursuant to the parties' respective leases.  *See Demchak* Compl. ¶¶ 22–25; *Brown* Am. Compl. ¶¶ 1–7; *Suessenbach* Compl. ¶¶ 1–7; *A & B Campbell* Am. Compl. ¶¶ 1–7; *Burkett* Compl. ¶¶ 1–4; *Tyler* Compl. ¶¶ 1–11.  The plaintiffs in the *Brown* Litigation, *Suessenbach* Litigation, and *A & B Campbell* Litigation additionally seek damages for allegedly engaging in a purported scheme to charge landowners artificially inflated

and supra-competitive rates for certain post-production services.  *See Brown* Am. Compl. ¶¶ 1–7; *Suessenbach* Compl. ¶¶ 1–7; *A & B Campbell* Am. Compl. ¶¶ 1–7.  Thus, the plaintiffs in the Pennsylvania Royalty Cases assert claims, as defined in the Bankruptcy Code and the Plan, against the Debtors.

### B. The Plaintiffs in the Pennsylvania Royalty Cases Assert Claims That Arose Before the Effective Date

39.    The plaintiffs in the Pennsylvania Royalty Cases assert claims that arose before the Effective Date.  Specifically, while they do not provide precise timeframes, the plaintiffs all assert claims for alleged underpaid royalties, stemming from leases that were entered into before the respective complaints was filed, which precede the bankruptcy and the Effective Date.  *See Placid Oil Co. v. Williams* (*In re Placid Oil Co.*), 463 B.R. 803, 813 (Bankr. N.D. Tex. 2012) ("[T]he Fifth Circuit ultimately seemed to embrace what is known as the 'pre-petition relationship test' (which might fairly be described as a test in the middle of the spectrum between 'accrual' and 'conduct'), which test provides that a 'claim arises at the time of the debtor's . . . conduct forming the basis of liability ***only if*** the claimant had some type of specific relationship with the debtor at that time.'" (quoting *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1276 (5th Cir. 1994))); *see also In re 804 Congress, L.L.C.*, 529 B.R. 213, 228–29 (Bankr. W.D. Tex. 2015) (holding that a claim is a prepetition claim if it is based on prepetition conduct, even if it does not accrue until after the petition date); *see generally Demchak* Compl. ¶ 12; *Brown* Am. Compl. ¶ 23; *Suessenbach* Compl. ¶ 52; *A & B Campbell* Am. Compl. ¶¶ 142–43; *Burkett* Compl. ¶ 5; *Tyler* Compl. ¶¶ 21–32.  These claims are based on Chesapeake's royalty payment practices before the Effective Date.  Likewise, the plaintiffs' RICO claims in the *Brown* Litigation, *Suessenbach* Litigation, and *A & B Campbell* Litigation are based on an alleged conspiracy to take improper

deductions—premised on Chesapeake's pre-Effective Date royalty payment methodology—and thus arose before the Effective Date.

**C. The Plaintiffs in the Pennsylvania Royalty Cases Are Enjoined from Continuing Their Litigation with Respect to Pre-Effective Date Claims Asserted Against the Reorganized Debtors**

40.     The plaintiffs' pursuit of the pre-Effective Date claims asserted in the Pennsylvania Royalty Cases against the Reorganized Debtors is a clear violation of the discharge injunction and section 524(a) of the Bankruptcy Code.  *See* Plan, Art. VIII.A (discharging Claims "whether or not" "a Proof of Claim . . . is Filed or deemed Filed").

41.     To implement the discharge under section 1141 of the Bankruptcy Code, section 524(a)(2) of the Bankruptcy Code provides that "[a] discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]"   11 U.S.C. § 524(a)(2). Consistent with this provision, the Confirmation Order provides that the releases, injunctions, exculpations, discharges, and related provisions set forth in Article VIII of the Plan are incorporated into the Confirmation Order, are approved and authorized in all respects, and shall be immediately effective on the Effective Date.  *See* Confirmation Order ¶ 90.  Additionally, with respect to the discharge, the Plan provides:

> Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, ***all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in***

> ***connection with or with respect to any such Claims or Interests***;
> (2) enforcing, attaching, collecting, or recovering by any manner or
> means any judgment, award, decree, or order against such Entities
> on account of or in connection with or with respect to any such
> Claims or Interests; (3) creating, perfecting, or enforcing any
> encumbrance of any kind against such Entities or the property or the
> Estates of such Entities on account of or in connection with or with
> respect to any such Claims or Interests; (4) asserting any right of
> setoff, subrogation, or recoupment of any kind against any
> obligation due from such Entities or against the property of such
> Entities on account of or in connection with or with respect to any
> such Claims or Interests unless such holder has Filed a motion
> requesting the right to perform such setoff on or before the Effective
> Date, and notwithstanding an indication of a Claim or Interest or
> otherwise that such holder asserts, has, or intends to preserve any
> right of setoff pursuant to applicable law or otherwise; and
> (5) commencing or continuing in any manner any action or other
> proceeding of any kind on account of or in connection with or with
> respect to any such Claims or Interests released or settled pursuant
> to the Plan.

*See* Plan, Art. VIII.F (emphasis added).

42.     Accordingly, the plaintiffs in the Pennsylvania Royalty Cases are permanently enjoined from pursuing any pre-Effective Date claims against the Reorganized Debtors.

43.     It bears noting that, while the plaintiffs' ***post***-Effective Date claims were not discharged by the Confirmation Order and Plan, they nevertheless are invalid. As the Fifth Circuit recognized for the *Demchak* and *Brown-Suessenbach* plaintiffs, "[s]uch post-confirmation claims may well have been diminished by the PAAG settlement." *In re Chesapeake Energy Corp.*, 70 F.4th at 285 n.10. This is because Chesapeake "has been offering leaseholders the new royalty payment terms since February 2021 pursuant to the PAAG settlement," *id.*—specifically, the election of in-basin index or netback price, *see* PA AG Settlement §§ 3.2, 3.3. The result of this option, which has been available since the Effective Date, means that the plaintiffs in the Pennsylvania Royalty Cases can no longer assert post-Effective Date claims for alleged underpaid

royalties under their respective operative complaints, which are based on Chesapeake's previous methodology for calculating royalties.

## II. The MEC Settlement and the Non-MEC Settlement Are Null and Void

44. The MEC Settlement and the Non-MEC Settlement expressly provide that they are "subject to the approval of the Court." *See* MEC Settlement at 2 (second introductory paragraph & Recital F), 3 (Agreement paragraph); Non-MEC Settlement at 2 (second introductory paragraph & Recital F), 3 (Agreement paragraph). The agreements specifically define "Court" to mean "the United States Bankruptcy Court for the Southern District of Texas." *See* MEC Settlement § 1.8; Non-MEC Settlement § 1.8. Moreover, both agreements premise the "Settlement Effective Date" on a "Final Judgment," or—in the event that the Court's approval was appealed—an affirmance. *See* MEC Settlement §§ 1.12, 1.13, 1.38; Non-MEC Settlement §§ 1.13, 1.14, 1.42.

45. Thus, the MEC Settlement and the Non-MEC Settlement are conditioned on approval from this Court. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 412 (5th Cir. 2009) (construing "subject to" as a condition precedent to enforceability of contract). The Fifth Circuit ruled that the Court lacks jurisdiction to approve the settlement agreements. *See In re Chesapeake Energy Corp.*, 70 F.4th at 281–85. As a result of this ruling, this condition precedent cannot be satisfied, and the agreements are null and void. *See Karapetyan v. JPMorgan Chase Bank, N.A.*, 2012 WL 3308883, at *3–5 (E.D. Tex. June 6, 2012) (holding agreement unenforceable where conditions precedent not satisfied), *R. & R. adopted*, 2012 WL 3307448 (E.D. Tex. Aug. 12, 2012).

46. Moreover, the MEC Settlement and the Non-MEC Settlement contain severability provisions, which permit either party "to dissolve" and "withdrawn from the Settlement," if "a court of competent jurisdiction holds invalid or materially modifies any material provision." MEC Settlement § 18.2; Non-MEC Settlement 17.2. That is precisely what has happened. The Fifth

Circuit—"a court of competent jurisdiction"—invalidated the District Court and this Court's approval of the settlements, which were expressly premised on that approval. Because approval by this Court is a condition precedent to the settlement agreements, the multiple provisions establishing that condition are material. Chesapeake is therefore entitled to dissolve and withdraw from the MEC Settlement and Non-MEC Settlement. The Court should declare the settlements null and void for this additional reason.

## Conclusion

47.     The plaintiffs in the Pennsylvania Royalty Cases assert claims that were discharged and released pursuant to the Confirmation Order and Plan. Thus, the plaintiffs in these cases are enjoined from continued prosecution of their pre-Effective Date alleged royalty and RICO claims against the Reorganized Debtors. The Reorganized Debtors seek entry of an order enforcing the Confirmation Order and Plan, and requiring the plaintiffs in the Pennsylvania Royalty Cases to dismiss their pre-Effective Date alleged royalty and RICO claims against the Reorganized Debtors with prejudice. The Court should also declare the MEC Settlement and the Non-MEC Settlement to be null and void. Such agreements were expressly premised on approval by this Court, which the Fifth Circuit's ruling forecloses.

## Notice

48.     The Reorganized Debtors will provide notice of this motion to: (a) the United States Trustee for the Southern District of Texas; (b) counsel to the plaintiffs in the Pennsylvania Royalty Cases; and (c) any party that has requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002. In light of the nature of the relief requested, no other or further notice need be given.

Houston, Texas
July 27, 2023

*/s/ J. Machir Stull*

| | |
|---|---|
| **JACKSON WALKER LLP.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Kristhy M. Peguero (TX Bar No. 24102776) | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice* ) |
| J. Machir Stull (TX Bar No. 24070697) | Alexandra Schwarzman (admitted *pro hac vice*) |
| 1401 McKinney Street, Suite 1900 | 300 North LaSalle Street |
| Houston, Texas 77010 | Chicago, Illinois 60654 |
| Telephone:      (713) 752-4200 | Telephone:      (312) 862-2000 |
| Facsimile:      (713) 752-4221 | Facsimile:      (312) 862-2200 |
| Email:      mcavenaugh@jw.com | Email:      patrick.nash@kirkland.com |
|            kpeguero@jw.com |            alexandra.schwarzman@kirkland.com |

*Co-Counsel to the Reorganized Debtors*          *Co-Counsel to the Reorganized Debtors*

## **<u>Certificate of Service</u>**

I certify that on July 27, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ J. Machir Stull*
J. Machir Stull

# Exhibit A

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

DEMCHAK PARTNERS LIMITED     :
PARTNERSHIP, *et al.*,
                             :
       Plaintiffs      :     CIVIL ACTION NO. 3:13-2289
                             :
  v.                         :
                             :     (JUDGE MANNION)
CHESAPEAKE APPALACHIA,
LLC, *et al.*,               :

      Defendants       :

**O R D E R**

The court has received notice of the decision issued by the United

States Court of Appeals for the Fifth Circuit in *Matter of Chesapeake Energy*

*Corporation*, 70 F.4th 273 (5th Cir. 2023), wherein the Fifth Circuit vacated

decisions of the district and bankruptcy courts approving two post-

confirmation class action settlements related to the above-captioned matter[1]

---

[1] The three Middle District pre-petition actions directly addressed by the
proposed post-confirmation settlements are *Demchak Partners Ltd., et al., v.
Chesapeake Appalachia, LLC,* Civil Action No 13-2289 (M.D.Pa. 2013);
*Brown v. Access Midstream Partners, LP,* Civil Action No. 3:14-591 (M.D.Pa.
2014); and *Suessenbach v. Access Midstream Partners, LP,* Civil Action No.
3:14-1197 (M.D.Pa. 2014). Also listed as a case related to *Brown* and
pending before this court is *A&B Campbell Family, et al., v. Chesapeake
Energy Corporation, et al.*, Civil Action No. 3:15-340 (M.D.Pa. 2015).

after finding that the bankruptcy court lacked both "core" and "related to" jurisdiction to adjudicate the proposed settlements.

**IT IS HEREBY ORDERED THAT:** on or before **Monday, August 7, 2023**, counsel for the parties are to provide the court with the status of the above-captioned matter in light of the Fifth Circuit's opinion and the posture of the proceedings in the Bankruptcy Court.

MALACHY E. MANNION
United States District Judge

**DATED: July 14, 2023**
13-2289-20

2

# Exhibit B

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

JAMES L. BROWN, *on behalf*     :
*of himself and all others simil*arly
*situated,*     :

       **Plaintiffs**     :     **CIVIL ACTION NO. 3:14-0591**

    v.        :

            **(JUDGE MANNION)**

**ACCESS MIDSTREAM**     :
**PARTNERS, L.P.,** *et al.,*

           :

       **Defendants**

## O R D E R

The court has received notice of the decision issued by the United

States Court of Appeals for the Fifth Circuit in *Matter of Chesapeake Energy*

*Corporation*, 70 F.4th 273 (5th Cir. 2023), wherein the Fifth Circuit vacated

decisions of the district and bankruptcy courts approving two post-

confirmation class action settlements related to the above-captioned matter[1]

---

[1] The three Middle District pre-petition actions directly addressed by the proposed post-confirmation settlements are *Demchak Partners Ltd., et al., v. Chesapeake Appalachia, LLC,* Civil Action No 13-2289 (M.D.Pa. 2013); *Brown v. Access Midstream Partners, LP,* Civil Action No. 3:14-591 (M.D.Pa. 2014); and *Suessenbach v. Access Midstream Partners, LP,* Civil Action No. 3:14-1197 (M.D.Pa. 2014). Also listed as a case related to *Brown* and pending before this court is *A&B Campbell Family, et al., v. Chesapeake Energy Corporation, et al.*, Civil Action No. 3:15-340 (M.D.Pa. 2015).

1

after finding that the bankruptcy court lacked both "core" and "related to" jurisdiction to adjudicate the proposed settlements.

**IT IS HEREBY ORDERED THAT:** on or before **Monday, August 7, 2023**, counsel for the parties are to provide the court with the status of the above-captioned matter in light of the Fifth Circuit's opinion and the posture of the proceedings in the Bankruptcy Court.

**MALACHY E. MANNION**
**United States District Judge**

**Dated:**     **July 14, 2023**
14-591-12

# Exhibit C

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

THE SUESSENBACH FAMILY          :
LIMITED PARTNERSHIP, JAMES
S. SUESSENBACH, *individually*   :     CIVIL ACTION NO. 3:14-1197
*and on behalf of himself and all*
*others simila*rly *situated,* and  :        (JUDGE MANNION)
GINA M. SUESSENBACH,
*individually and on behalf of all*  :
*others similarly situated,*

                                :

     Plaintiffs

                                :

     v.

                                :

ACCESS MIDSTREAM PARTNERS,
L.P., *et al.,*                  :

     Defendants          :


# O R D E R

The court has received notice of the decision issued by the United

States Court of Appeals for the Fifth Circuit in *Matter of Chesapeake Energy*

*Corporation*, 70 F.4th 273 (5th Cir. 2023), wherein the Fifth Circuit vacated

decisions of the district and bankruptcy courts approving two post-

confirmation class action settlements related to the above-captioned

1

matter[1] after finding that the bankruptcy court lacked both "core" and "related to" jurisdiction to adjudicate the proposed settlements.

**IT IS HEREBY ORDERED THAT:** on or before **Monday, August 7, 2023**, counsel for the parties are to provide the court with the status of the above-captioned matter in light of the Fifth Circuit's opinion and the posture of the proceedings in the Bankruptcy Court.

**MALACHY E. MANNION**
**United States District Judge**

**Date: July 14, 2023**
14-1197-08

---

[1] The three Middle District pre-petition actions directly addressed by the proposed post-confirmation settlements are *Demchak Partners Ltd., et al., v. Chesapeake Appalachia, LLC,* Civil Action No 13-2289 (M.D.Pa. 2013); *Brown v. Access Midstream Partners, LP,* Civil Action No. 3:14-591 (M.D.Pa. 2014); and *Suessenbach v. Access Midstream Partners, LP,* Civil Action No. 3:14-1197 (M.D.Pa. 2014). Also listed as a case related to *Brown* and pending before this court is *A&B Campbell Family, et al., v. Chesapeake Energy Corporation, et al.,* Civil Action No. 3:15-340 (M.D.Pa. 2015).

2

# Exhibit D

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

A & B CAMPBELL FAMILY, *et al.*,  :

                    :

       **Plaintiffs**              **CIVIL ACTION NO. 3:15-0340**

                    :

       **v.**

                    :       **(JUDGE MANNION)**

CHESAKPEAKE ENERGY
CORPORATION, *et al.*,         :

       **Defendants**       :

## O R D E R

The court has received notice of the decision issued by the United States Court of Appeals for the Fifth Circuit in *Matter of Chesapeake Energy Corporation*, 70 F.4th 273 (5th Cir. 2023), wherein the Fifth Circuit vacated decisions of the district and bankruptcy courts approving two post-confirmation class action settlements related to the above-captioned matter[1] after finding that the bankruptcy court lacked both "core" and "related to" jurisdiction to adjudicate the proposed settlements.

---

[1] The three Middle District pre-petition actions directly addressed by the proposed post-confirmation settlements are *Demchak Partners Ltd., et al., v. Chesapeake Appalachia, LLC,* Civil Action No 13-2289 (M.D.Pa. 2013); *Brown v. Access Midstream Partners, LP,* Civil Action No. 3:14-591 (M.D.Pa. 2014); and *Suessenbach v. Access Midstream Partners, LP,* Civil Action No. 3:14-1197 (M.D.Pa. 2014). Also listed as a case related to *Brown* and

1

**IT IS HEREBY ORDERED THAT:** on or before **Monday, August 7, 2023**, counsel for the parties are to provide the court with the status of the above-captioned matter in light of the Fifth Circuit's opinion and the posture of the proceedings in the Bankruptcy Court.

**MALACHY E. MANNION**
**United States District Judge**

**Date: July 14, 2023**
15-340-04

---

pending before this court is *A&B Campbell Family, et al., v. Chesapeake Energy Corporation, et al.*, Civil Action No. 3:15-340 (M.D.Pa. 2015).

2

# Exhibit E

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEMCHAK PARTNERS LIMITED PARTNERSHIP; JAMES P. BURGER, JR. and BARBARA H. BURGER; WILLIAM A. BURKE, II and CLARA BURKE; WILLIAM A. BURKE, III; EDWARD J. BURKE; DONALD G. FULLER and KAREN M. FULLER; RANDY K. HEMERLY; LAMAR R. KING; LINDA J. SCHLICK; AND JANET C. YOUNG, on Behalf of Themselves and All Others Similarly Situated, | Case No. 3:13-cv-2289 |
|            Plaintiffs, | |
|   and | |
| RUSSELL E. BURKETT and GAYLE BURKETT, | |
|            Plaintiffs-Intervenors, | |
|   v. | |
| CHESAPEAKE APPALACHIA, L.L.C., | |
|            Defendant. | |

## PLAINTIFFS' STATUS REPORT

Pursuant to the Court's Order of July 17, 2023 (Dkt. 236), undersigned counsel for Plaintiffs and the proposed class of lessors with market enhancement clauses ("MEC Class") hereby provide the Court with the following status report:

Following the Fifth Circuit Court of Appeals' decision vacating the district court's and bankruptcy courts' approval of the class action settlement of the MEC

- 1 -

Class claims, certain counsel for the MEC Class engaged in discussions with counsel for Chesapeake about returning to this Court to present this settlement for this Court's approval. Chesapeake ultimately conveyed its position that it no longer viewed the settlement as operative and would not agree to jointly or otherwise present the settlement to this Court for approval.

Plaintiffs believe and will argue that the settlement agreement is binding and enforceable by this Court. Accordingly, Plaintiffs intend to file with this Court a motion for preliminary approval of the settlement and to enforce the agreement in the coming weeks.

Dated:  July 26, 2023

Respectfully submitted,

By:  ___/s/ Daniel E. Seltz_____
Daniel E. Seltz (*Pro Hac Vice*)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592
dseltz@lchb.com

Charles E. Schaffer
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone:  (215) 592-1500
Facsimile: (215) 592-4663
CSchaffer@lfsblaw.com

Michelle R. O'Brien
The O'Brien Law Group LLC
2800 Stafford Avenue, Box 3034
Scranton, PA 18505
Telephone: (570) 575-2094
Facsimile: (570) 309-0147
mobrien@theobrienlawgroup.com

Charles J. LaDuca
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Ave., Ste. 810
Bethesda, MD 20814
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com

John W. ("Don") Barrett (*Pro Hac Vice*)
Barrett Law Group
Post Office Drawer 927
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662) 834-2628
dbarrett@barrettlawgroup.com

Larry D. Moffett (*Pro Hac Vice*)
LAW OFFICE OF LARRY D. MOFFETT,
PLLC
P.O. Box 1418
Oxford, MS  38655
Telephone:  (662) 298-4435
larry@larrymoffett.com

*Attorneys for Plaintiffs and the Settlement Class*

## CERTIFICATE OF SERVICE

I certify that I have served a true and correct copy of the foregoing on counsel of record via electronic case filing.

Executed on this the 26th day of July, 2023.

/s/ *Daniel E. Seltz*
Daniel E. Seltz