```
                    UNITED STATES BANKRUPTCY COURT
                  SOUTHERN DISTRICT OF TEXAS (HOUSTON)

                                     .  Case No. 20-33239
IN RE:                               .  Chapter 11
                                     .  (Jointly Administered)
CHESAPEAKE EXPLORATION,              .
L.L.C.,                              .  515 Rusk Avenue
                                     .  Houston, TX  77002
                                     .
                    Debtor.          .  Thursday, August 31, 2023
. . . . . . . . . . . . . . . . .    .  1:46 p.m.
```

TRANSCRIPT OF MOTION REORGANIZED DEBTORS' MOTION FOR ENTRY OF
AN ORDER (I) ENFORCING THE CONFIRMATION ORDER AND PLAN AGAINST
THE REORGANIZED DEBTORS AND (II) DECLARING THE MEC SETTLEMENT
    AND NON-MEC SETTLEMENT NULL AND VOID FILED BY DEBTOR
           CHESAPEAKE EXPLORATION, L.L.C. [322]
          BEFORE THE HONORABLE DAVID R. JONES
          UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

 For the Debtor:           Jackson Walker LLP
                           By:  MATTHEW CAVENAUGH, ESQ.
                                VICTORIA ARGEROPLOS, ESQ.
                                EMILY FLYNN MERAIA, ESQ.
                           1401 McKinney Street, Suite 1900
                           Houston, TX  77010
                           (713) 752-4334

                           Jackson Walker LLP
                           By:  JOHN MACHIR STULL, ESQ.
                           2323 Ross Avenue, Suite 600
                           Dallas, TX  75201
                           (214) 953-6039

APPEARANCES CONTINUED.

 Audio Operator:           Court ECR Personnel

 Transcription Company:    Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46048
                           (855) 873-2223
                           www.accesstranscripts.com


     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

```
APPEARANCES (Continued):


For the Debtor:            Kirkland & Ellis LLP
                           By:  DANIEL T. DONOVAN, ESQ.
                           1301 Pennsylvania Avenue, N.W.
                           Washington, DC  20004
                           (202) 389-5000


For the MEC Class          Lieff Cabraser
Plaintiffs:                By:  DANIEL SELTZ, ESQ.
                           250 Hudson Street, 8th Floor
                           New York, NY  10013
                           (212) 355-9500


                           Law Office of Larry D. Moffett, PLLC
                           By:  LARRY MOFFETT, ESQ.
                           39 County Road 231
                           Oxford, MS  38655
                           (662) 298-4435


For the Non-MEC Class      Kessler Topaz Meltzer & Check, LLP
Plaintiffs:                By:  TYLER GRADEN, ESQ.
                           280 King of Prussia Road
                           Radnor, PA  19087
                           (610) 667-7706


                           Donovan Litigation Group, LLC
                           By:  MICHAEL DONOVAN, ESQ.
                           1885 Swedesford Road
                           Malvern, PA  19355
                           (610) 647-6067


For the A&B Campbell       Indik & McNamara PC
Family LLC Plaintiffs:     By:  THOMAS S. MCNAMARA, ESQ.
                           123 South Broad Street, Suite 1200
                           Philadelphia, PA  19109
                           (215) 567-7125


For the Tyler              Schnader Harrison Segal & Lewis LLP
Plaintiffs:                By:  IRA N. RICHARDS, ESQ.
                           1600 Market Street, Suite 3600
                           Philadelphia, PA  19103-7286
                           (215) 751-2000


Also Present:              ROBERT ROBINSON

                           CAROL BRITTAIN

                           RYAN VAN ESLER
```

1          (Proceedings commence at 1:46 p.m.)

2          THE COURT:  All right.  Thank you, and officially

3  good afternoon, everyone.  This is Judge Jones.  The time is

4  1:46 Central.  Today is August the 31st, 2023.  This is the

5  docket for Houston, Texas.  Also on the 1:30 docket, we have

6  the jointly-administered cases under Case Number 20-33239,

7  Chesapeake Exploration, L.L.C.

8          Folks, again, please don't forget to record your

9  electronic appearance.  It's a quick trip to the website, a

10 couple of mouse clicks.  You can do that at any time prior to

11 the conclusion of the hearing.  It is the way that we note your

12 official appearance.

13         First time that you speak, if you would, please make

14 sure you state your name and who you represent.  Really does

15 help the court reporter in the event that a transcript request

16 is made.

17         Finally, we are recording this afternoon using

18 CourtSpeak.  The audio will be up on the docket shortly after

19 the conclusion of the hearing.

20         I did see one party who hit "five star."  I have

21 activated the hand-raising feature.  I think I've got somebody

22 on the line that has enjoyed spending the day riding around in

23 their, evidently, convertible, because it's just been windy

24 noise all day long.  I don't know where it's from, but I don't

25 want you to suffer through that.  So, if you know you're going

1   to be speaking, "five star" on your phone.  You can change your

2   mind at any time.

3          And with that, Mr. Donovan, good afternoon.

4          MR. D. DONOVAN:  Good afternoon, Judge.  Can you hear

5   me okay?

6          THE COURT:  Loud and clear.  Thank you for checking.

7          MR. D. DONOVAN:  Great.  Good afternoon.  And good

8   afternoon to counsel we've dealt with for some time.

9          So, Judge, we're here on behalf of Chesapeake seeking

10   two forms of relief:  First, our motion seeks an order

11   requiring counsel to dismiss pre-effective date claims from

12   five cases.  Okay?  And I'll have some slides in a moment.

13   But, counsel in one of those cases, the Tyler case has already

14   stipulated to that relief.  And just before this hearing, we

15   agreed to an order that's going to get filed in the Middle

16   District in that case.

17          Two of the cases, the MEC and the non-MEC, say in the

18   briefing, and I take them at their word, that they're not going

19   to pursue pre-effective date claims, but they haven't dismissed

20   those cases or claims yet, and we believe we're entitled to an

21   order, mostly because I want to make sure if whatever proceeds

22   in front of Judge Mannion in the Middle District is clear, that

23   what is proceeding, what could proceed and what isn't.

24          Two of the cases, the Burkett and A & B Campbell, I

25   did not see a response from them.  I don't believe they're

1  going to, but I haven't seen a response, and we believe we're

2  entitled to an order there.  So that's relief number one.

3         The second, Judge, we seek an order declaring the MEC

4  and non-MEC settlement agreements with the debtor be declared

5  null and void, and that counsel cannot seek to enforce these

6  agreements with the debtor in another court.

7         Now, the MEC counsel has been straightforward.  They

8  said they intend to move in front of the Middle District of

9  Pennsylvania with that agreement.  The non-MEC in their

10 briefing suggested, although I'm not entirely clear, that they

11 did not intend to pursue the non-MEC settlement, but the door

12 wasn't closed.

13        We believe, per the terms of the agreement and the

14 Fifth Circuit's decision, these agreements with the debtor are

15 now null and void.  And in any event, anything related to

16 agreements with the debtor need to be addressed with this Court

17 is our view.  It interplays with both the plan, the

18 confirmation order, and we simply believe that it can't go

19 anywhere else.

20        So, Judge, if I could share my screen a bit to show a

21 few slides.

22        THE COURT:  You have control.

23        MR. D. DONOVAN:  Thank you.

24        THE COURT:  Well, while he's doing that, Mr. Michael

25 Donovan and Mr. Seltz, I see you raising your hand.  Everybody

1   will get an opportunity.

2         MR. D. DONOVAN:  So, Judge, I want to start with --

3   you've seen this slide before, which is pretty much the three

4   key cases we talked about during the case, starting from the

5   right with the Pennsylvania AG action, which this Court

6   approved and has been implemented, and Chesapeake has since

7   been dismissed.

8         Importantly, as part of that settlement, the royalty

9   owner elections have been implemented.  And as Your Honor

10   probably remembers, that going-forward relief was mirrored in

11   the non-MEC and MEC action.  The underlying actions, the

12   non-MEC and MEC, are still pending in the Middle District of

13   Pennsylvania, although they are presently stayed, and the judge

14   there has asked for status reports that the parties have filed.

15         These were the five cases I mentioned and kind of

16   just tried to put where I think the issues are.  In the MEC

17   case, pending in the Middle District, they agree no

18   pre-effective date claims will proceed, but we believe we need

19   an order on that or entitled to that or at least a stipulation,

20   and that they intend to seek to enforce the MEC settlement in

21   the Middle District.

22         The non-MEC is similar, except they said in their

23   briefing they currently don't intend, or something to that

24   effect, to pursue the non-MEC settlement.  They intend to

25   litigate.

1         The Tyler case, we've resolved.  Burkett and A & B

2    Campbell, we didn't see a response.  We believe, there,

3    there's no settlements, but we're entitled to a ruling on the

4    pre-effective date claims.

5         So, Judge, this is what I said before, and I'm

6    going to address it in this order:  first, regarding the

7    pre-effective date claims; and then second, regarding the

8    settlements.

9         So let me start with -- Your Honor may wonder, why do

10   we have a dispute on the pre-effective date claims when, in

11   their briefs, the plaintiffs say they don't intend to pursue

12   it?  As I said, you know, the only complaints that are pending

13   in the Middle District relate to pre-effective date conduct.

14   We believe they don't have claims going forward, but that's not

15   for this court.  But we believe those cases either need to be

16   dismissed or we need to have those claims very clearly

17   dismissed out of the case.  So, to the extent we appear in

18   front of Judge Mannion in the Middle District, it's very clear

19   what's left or what could be left.

20        So these are clips from the operative complaints.

21   And as you can see, they start all the way back, 2010, 2012,

22   and et cetera.  I'm not going to repeat this.  Your Honor

23   knows, and it's in our brief, but they are claims.  They're

24   pre-effective date claims, and the plan discharges them.  We

25   believe we're entitled to an order.

1          Going to the second form of relief, this is where the

2     settlement agreements -- so this is just related to the MEC and

3     the non-MEC.  These settlement agreements, we were all together

4     before, I know, but they were with the debtors.  They are not

5     with any other entities.  They're with the debtors that's under

6     the jurisdiction of this Court.  They involve the plan and

7     proceeds, as the agreement itself recognized the distribution

8     of the funds pursuant to the Chapter 11 plan.  So any attempt

9     to enforce it would be impacting the plan.  And not only does

10    the MEC and the non-MEC settlement agreements recognize that,

11    the Fifth Circuit did as well.

12          The plaintiffs on the appeals and the briefing also

13    recognize this.  I focus on the second bullet.  Look, it

14    relates to the debtor.  I don't think there could be any

15    dispute about that.  And I show this only to show that the

16    plaintiffs at the time had agreed to this as well.

17          One of the issues in the briefing was one of the

18    terms defined is defined as "court."  And it's this court.  And

19    that makes sense because any agreement with the debtor, not

20    only under Rule 23, but under bankruptcy law, Your Honor would

21    need to approve it before it could proceed.

22          What I show here is that the agreement doesn't just

23    mention it once.  Many, many of the requirements and terms of

24    the settlements relate to approval by this court.  And there's

25    other terms too.  I'm not going to go through them, but this is

1  one that seemed quite obvious to me.

2          So I come back to where I started.  That is, this

3  cannot be enforced.  If anything related to this agreement with

4  the debtor is going to be interpreted or otherwise addressed,

5  it needs to be with this court.  And with that, I'm happy to

6  answer any questions, Judge.  We'll pass the podium.

7          THE COURT:  All right.  Thank you.

8          Mr. Donovan.  No preference on order, but I saw you

9  first.  Mr. Michael Donovan.  My apologies.  Mr. Donovan, I

10  can't hear you.  Had you hit "five star" or perhaps -- some

11  people do a double mute just to be careful.

12          Mr. Donovan, I can't hear you.  I just want to make

13  sure -- some people hit "star five" mistakenly.  It's "five

14  star."  Only need to do it once.  There you go.

15          MR. M. DONOVAN:  Okay.

16          THE COURT:  All right.

17          MR. M. DONOVAN:  Can you hear me now?

18          THE COURT:  Yes, sir.  Thank you.

19          MR. M. DONOVAN:  Oh, thank you.  Well, good

20  afternoon, Your Honor.  May it please the Court, I'm here on

21  behalf of the Browns and the non-MEC claims, the non-MEC class.

22  Let me just highlight, Your Honor, that we have three basic

23  points.  The first is that the non-MEC claims are not contract

24  or lease language related claims.  They are RICO claims with

25  mail fraud predicate acts.

1          There are two other defendants named in the RICO

2    cases brought by the non-MEC claimants.  Both of those

3    defendants are non-debtors.  One is Access Midstream, now the

4    Williams Companies, and the other is Domenic Dell'Osso, who was

5    the head of Access Midstream during the relative period --

6    relevant period.  Both of these are defendants and are non-

7    debtors and are not affected by the discharge.

8          In the non-MEC status report that we filed with the

9    Middle District of Pennsylvania earlier this month, we

10   expressly stated that the non-MEC plaintiffs and the class are

11   not seeking to enforce the settlement agreement that was signed

12   and submitted to Your Honor, and we're not pursuing any damages

13   claims against Chesapeake for pre-bankruptcy gas gathering and

14   transportation charges that were deducted from our loyalties

15   that are covered by this Court's discharge order and

16   injunction.

17          THE COURT:  Got it.

18          MR. M. DONOVAN:  Instead, we advised the Middle

19   District of Pennsylvania that the litigation that we're

20   pursuing is only against -- for the pre-discharge period would

21   be only against the other two defendants and related -- any

22   related post-bankruptcy inflated revenues that were received by

23   Chesapeake.

24          That post-bankruptcy inflated revenue is not covered

25   by the discharge petition, and I think the Fifth Circuit itself

1  recognized that in its decision.

2          THE COURT:  Got it.  So, Mr. Donovan, and my

3  apologies for interrupting.  Just so we get on the same page,

4  there's a key term -- because you've used a couple of different

5  terms, one of which I didn't even understand.  I don't know

6  what a discharge petition is, and I don't think you really

7  meant to say that, but the term --

8          MR. M. DONOVAN:  Oh, I didn't mean to say --

9          THE COURT:  No, no, no.  It's -- the term I want to

10  focus on, to make sure you agree, is the effective date of the

11  plan, because that's the black line.  I mean, that's -- before

12  effective date, discharge covers; post-effective date,

13  discharge doesn't touch.  I just want to make sure you and I

14  are on the same page.

15          MR. M. DONOVAN:  We are on the same page.  I should

16  use (audio interference) date.

17          THE COURT:  Okay.

18          MR. M. DONOVAN:  That's the relevant and that's what

19  the Fifth Circuit used as well.

20          THE COURT:  Right.

21          MR. M. DONOVAN:  I guess related to the first point,

22  Your Honor, is there really isn't any case or controversy

23  before Your Honor with respect to the non-MEC claims.  We're

24  not going to pursue pre-effective date claims against

25  Chesapeake.  We have no intention of doing that.  We told the

1  Middle District of Pennsylvania that we're not pursuing those

2  claims for damages.  And to ask Your Honor to issue an order in

3  this matter is really asking for an advisory opinion that we

4  don't think is proper, given the Fifth Circuit's decision,

5  because it's a non-issue.

6          So we also, given the Fifth Circuit's decision,

7  submit that the Court doesn't have subject matter jurisdiction

8  because the non-MEC plaintiffs have not and are not pursuing

9  any pre-effective date damages claims against Chesapeake, and

10 we're not pursuing enforcement of the settlement agreement that

11 Mr. Donovan, my brother from another mother, referred to.

12         And so -- and then for the third point, Your Honor,

13 whether and to what extent Chesapeake received gas revenues

14 post-effective date that were falsely inflated by the deduction

15 of inflated gas gathering and transportation costs is an issue

16 really for the Middle District of Pennsylvania.  Whether that

17 happened and the extent of it is really what would be litigated

18 before that court, if anything.  We don't have any discovery on

19 that.  We don't know.  But we do know that the same structure

20 that we challenged in the RICO allegations continued to exist

21 post-effective date.

22         So that's the distinction there.  So we respectfully

23 submit that the Fifth Circuit's mandate directs that this post-

24 effective date conduct is beyond the core and "related to"

25 jurisdiction of the bankruptcy court.  And I think the Fifth

1  Circuit said that at the end of its opinion.

2         THE COURT:  Yeah.  I -- whether they said it or not,

3  I mean, obviously it's important to me if the Circuit says

4  something, but I agree with you, whether they said it or not.

5  Post-effective date, my jurisdiction ends.

6         MR. M. DONOVAN:  Yes.  So those are our points.

7  Thank you, Your Honor.

8         THE COURT:  I got it.  All right.  Thank you.

9         Mr. Seltz?  And, Mr. Seltz, I haven't heard you yet.

10  Had you hit "five star" on your phone?  There you are.

11         MR. SELTZ:  Okay.  Can you -- is that better?

12         THE COURT:  Yes, sir.  Thank you.

13         MR. SELTZ:  Okay.  I'm Daniel Seltz from Lieff

14  Cabraser Heimann & Bernstein, and I'm here on behalf of the MEC

15  plaintiffs.  And I want to apologize, Your Honor.  I had some

16  technical difficulties getting onto the audio and was unable to

17  hear the beginning of Dan Donovan's presentation.

18         So I can go ahead and make the points I wanted to

19  make, and I think was able to hear him when he was moving on to

20  the second point.  But if I'm going over ground that Your Honor

21  doesn't want to go over again --

22         THE COURT:  It's okay.  Go ahead.

23         MR. SELTZ:  Okay.  And I do apologize.  We basically

24  have just a couple of key points to make here.  The first is

25  that, in our view, the Fifth Circuit couldn't have been

1    clearer.  The opening paragraph is that -- of the opinion

2    states that handling these forward-looking cases within the

3    bankruptcy court predicated on 28 U.S.C. Section 1334(a) or (b)

4    rather than in the court where they originated, exceeds federal

5    bankruptcy post-confirmation jurisdiction.

6           In our view, the Court doesn't need to do much more

7    than look at the plain language of that opinion -- there's

8    similar language elsewhere in the opinion -- to find that it

9    lacks jurisdiction to take any action relating to this

10   settlement.

11          The MEC class claims are now solely post-petition

12   claims that are outside of this Court's jurisdiction.  The

13   Fifth Circuit held that the settlement doesn't concern the

14   bankruptcy and repeatedly characterized the settlement as

15   forward-looking.

16          What we are proposing to do in the Middle District of

17   Pennsylvania is entirely faithful to the Fifth Circuit's

18   holding, which is to take these claims, which the Fifth Circuit

19   said do not belong here, to the court where they originated,

20   and move forward with an otherwise binding agreement.

21          Now, if the Court does reach the merits of

22   Chesapeake's motion, which is the request to essentially

23   nullify the settlement, it should also deny the relief that

24   Chesapeake is seeking, because, for reasons I can go into, the

25   settlement remains valid and binding on (audio interference).

1        If I could just briefly touch on a couple of the

2  points that Chesapeake made in its reply, I think -- otherwise,

3  I think we covered a lot of this in our response brief.  The

4  first was that Chesapeake argues that the parties have agreed

5  that this Court has jurisdiction over the settlement.  And

6  while parties can agree to submit a contract to the

7  jurisdiction of a court, a party can't vest the court with

8  jurisdiction where it doesn't independently have it.  That's

9  black letter law in this circuit and everywhere else, the

10  jurisdiction can't be conferred by consent or agreement or

11  conduct.

12        The next argument that Chesapeake made, and I think I

13  heard Mr. Donovan again refer to this, is that there's

14  jurisdiction here because the settlements directly concern and

15  affect the distributions of the estate property.  Again, that's

16  exactly what the Fifth Circuit said these settlements,

17  including the MEC settlements, do not do.  I think this is just

18  an attempt to reargue that there's "related to" jurisdiction,

19  and the Fifth Circuit rejected the idea that there's "related

20  to" jurisdiction in finding that these are forward-looking

21  settlements involving forward-looking conduct.  The Fifth

22  Circuit explicitly held that this is a settlement that concerns

23  post-confirmation business.

24        Finally, on jurisdiction, Chesapeake has argued that

25  the Fifth Circuit decision was limited -- decision on

1    jurisdiction is limited to this Court's decision on preliminary

2    approval and the District Court's final approval of the

3    settlement agreement under Rule 23.  But the Fifth Circuit

4    opinion doesn't say that.  The holding is much broader.

5          Again, as I said, it refers to the -- handling these

6    forward-looking cases here exceeds jurisdiction.  It said that

7    it was going to discuss whether the -- this Court had

8    jurisdiction to hear and decide these class claims, and it

9    wouldn't make a lot of sense that this Court could exercise

10   jurisdiction over these claims and over the settlement just for

11   the purposes of interpreting it, let alone to nullify it, but

12   then lack jurisdiction to approve the settlement.  Meaning

13   that, as a practical matter, the parties could litigate these

14   claims but not settle them here, because all class claims, you

15   know, require court approval, and that's not what the Fifth

16   Circuit said.

17         So, again, I think that's as far as the Court needs

18   to go.  If the Court gets to this -- to Chesapeake's request

19   that the Court declare that (audio interference) to be null and

20   void, I think it should deny that relief first.  The idea that

21   the Court can now nullify the settlement because it was

22   premised on approval by the Court, you know, all class

23   settlements require court approval.  All class settlements

24   require the supervising court to apply Rule 23, wherever you

25   happen to be.

1          Here, we will just need to go back to the court that

2    the Fifth Circuit indicated was the correct court to seek

3    approval and go through that process.  This was an agreement.

4    The MEC agreement was meant to resolve claims that were

5    originally brought and still remain pending in the Middle

6    District.

7          The fact that the settlement defines "court" as this

8    Court, again, shouldn't -- that requires an interpretation by

9    this Court of what's material, which we don't think this Court

10   should be doing.  But we cited, you know, numerous cases in our

11   response that explain why the definition of "court" is a

12   severable term under Pennsylvania law and the language of the

13   agreement.

14         This is essentially about venue, which is what's at

15   issue here, and we've provided cases that venue isn't material.

16   Material terms are payment of money and the release, and here,

17   of course, the injunctive provisions which are going to be

18   performed in Pennsylvania.  And so I didn't really see an

19   attempt in Chesapeake's reply to argue that -- under

20   Pennsylvania law that -- that who happens to be applying these

21   Rule 23 factors is a material term.

22         We also argued -- we also cited cases that make it

23   clear that class settlements are enforceable pending court

24   approval.  The Curiale case from the Eastern District of

25   Pennsylvania has a very fulsome discussion about how the need

```
 1  for court approval doesn't affect the binding nature of the
 2  agreement.  The Fifth Circuit didn't reach Rule 23 factors, and
 3  there's nothing about its holding that would nullify the
 4  agreement.  I think, Your Honor, I can stop there in case
 5  Your Honor has any questions.
 6          THE COURT:  No, I don't.
 7          Anyone else wish to be heard?
 8      (No audible response)
 9          THE COURT:  All right.  Folks, let me tell you that
10  this is very easy for me.  I disagree with Mr. Seltz on what
11  the Circuit told me to do.  I've lived in this circuit my
12  entire judicial career.  I know exactly what they mean when
13  they say what they said.  This had nothing to do with Rule 23.
14  It had to do with my acting in contravention of my own
15  confirmation order and plan, which I -- obviously, I didn't
16  intend to do, but they said I did.
17          They also applied the standard -- if we remember, I
18  didn't -- I did the Rule 9019 portion.  I didn't certify a
19  class, and it is black letter law that a debtor can't enter
20  into a settlement without my approval.  Again, this is all very
21  simple.  Given what the Fifth Circuit said, what they directed
22  to do, there is no settlement because I didn't approve it.
23  They didn't have the authority to enter into it, because it
24  contravened my final non-appealable confirmation order and
25  plan.  So I do find that the MEC settlement and the non-MEC
```

1    settlements, they don't exist.  They're null and void.

2          Mr. Michael Donovan, I was sensitive to the comments

3    that you raised, and I had looked at the order, and I had

4    gotten away from using the term, effectively, "lawsuits."

5    Because, again, I think you're 100 percent right.  I don't

6    think a lawsuit needs to be dismissed simply because there are

7    claims that need to be dismissed.

8          And so what I'm going to do is I'm going to put up

9    a -- I've taken the order that was submitted by Mr. Dan

10   Donovan, and I've changed it.  And I would like specifically

11   for you to look at Paragraph 1, because what I've tried to do

12   is to deal only with the plan -- only with the claims that the

13   plan discharged.

14         So give me just a moment and I'll stick that up.

15   Mr. Dan Donovan, I want you to look at it too.

16         MR. D. DONOVAN:  Understood.

17         THE COURT:  So hold on.  Share my screen.  That's

18   interesting.  All right.  That didn't work.  Let me try that

19   again.  Here we go.

20         So first let me just confirm, Mr. Michael Donovan, I

21   see you looking at the screen, so I assume that you can see it.

22   So, again, wasn't trying to pick on anybody, wasn't trying to

23   single anybody out.  What I intended to do and what I think I

24   did was just recognize the effect of the discharge injunction

25   that's in the plan.  That just says you can't continue to do --

1    no one can continue to pursue any claims that arose prior to

2    the effective date, and you'll dismiss those claims, if they

3    exist, within 14 days.

4           Doesn't deal with any pending actions, doesn't deal

5    with claims against third parties, doesn't deal with

6    post-effective date claims.  It just says you'll clean up -- it

7    just says you'll clean up your lawsuit to make it consistent

8    with the confirmation order.

9           I really do want something that other judges can look

10   at, so that, if there's a criticism, it doesn't come to you

11   folks, it comes to me, which is where it ought to come to.  So

12   I just wanted there to be a very clear and unambiguous

13   directive.

14          So, Mr. Michael Donovan, is there something that I've

15   missed or that I missed part of your argument?

16          MR. M. DONOVAN:  Well, Your Honor, I have this

17   hesitation.  And you didn't miss -- can you hear me,

18   Your Honor?

19          THE COURT:  Yes, sir.  Yes, sir.

20          MR. M. DONOVAN:  I have this hesitation because this

21   is saying of any kind on account of or in connection with or

22   with respect to any claim against any of the debtors and/or

23   reorganized debtors that arose prior to the effective date,

24   continuing in any manner any action or other proceeding.

25          Here's my dilemma with that, Your Honor, just as a

1    practical matter.  We, as you know, have RICO claims.  We will

2    be pursuing subpoenaed discovery against Chesapeake related to

3    those RICO complaint proceedings.  So those would be an action

4    or proceeding for discovery, though we're not looking to

5    recover money from Chesapeake.  So I think that --

6               THE COURT:  I didn't think --

7               MR. M. DONOVAN:  -- in any manner --

8               THE COURT:  I didn't think about that.  Mr. Donovan,

9    would you -- first of all, do you -- I'm sorry.

10              Mr. Dan Donovan, do you have any issue with the

11   language that I have proposed?  Question Number 2:  Do you have

12   any objection if I added a sentence that this does not pertain

13   to lawful discovery?

14              MR. D. DONOVAN:  Yes.  If I can make a couple points,

15   I don't have a problem if we add lawful discovery.  I do want

16   to make one point (indiscernible) some language, Judge, just so

17   it's not kind of (indiscernible).  Is Mr. Donovan -- the

18   plaintiff, Mr. Donovan, not Mike, will make his claims.

19   There's two points.  One is I'm going to have to see those

20   claims before I can determine whether I believe they're

21   pre-effective dates (audio interference) claims --

22              THE COURT:  Of course.

23              MR. D. DONOVAN:  -- or coming back (audio

24   interference).

25              THE COURT:  Of course.

```
 1              MR. D. DONOVAN:  Secondly -- and I've raised this
 2   with Mike, but we didn't bring the motion yet.  I don't believe
 3   he can bring claims against Mr. Dell'Osso.  He was the CFO.
 4   He's now the CEO.  He was a released party under the plan that
 5   was not objected to by these plaintiffs.  That's not in this
 6   motion.  I just want to make that record so nobody thinks
 7   I'm -- but that's for another day.
 8              THE COURT:  Right.
 9              MR. D. DONOVAN:  I guess two issues with the sentence
10   here, Judge.  I'm just -- "claimants," I'm not sure if that's
11   the right term since these are folks that didn't make claims.
12   So I -- in our proposed order, we use the plaintiffs in those
13   cases.  But I know you're trying to go broader.  I just raise
14   that as a question for the group.
15              I don't have an objection to the other sentence or --
16   you know, if Mike is entitled to lawful discovery, he's
17   entitled to it.  I don't think this would block him.  So I
18   don't have a problem with that sentence.
19              THE COURT:  How about that?  Because I would have
20   used -- if I was doing bankruptcy, I would have said
21   "creditors."  "Claimants" was my attempt to be a state court
22   litigator, which I should probably never do.
23              MR. D. DONOVAN:  Yeah, I'm (audio interference)
24   persons.  And the sentence on discovery is not objectionable
25   for Chesapeake.
```

1          (Pause)

2                THE COURT:  Mr. Michael Donovan, did that solve the

3    issue that you were raising?

4                MR. M. DONOVAN:  Yes, but another issue was raised.

5    Is it the Court's intention to bind Mr. Dell'Osso, even though

6    he was the chief executive officer of Access Midstream?  I

7    mean, seems like we're going to be back before Your Honor --

8                THE COURT:  You may very well be, but that's a

9    separate motion, different issue.  What I'm doing today is I am

10   complying with the direction that was given to me by my

11   circuit.

12               MR. M. DONOVAN:  Yes, I understand, Your Honor, but I

13   just want it clear on the record that if we go and subpoena and

14   pursue against Domenic Dell'Osso, I'm not going to be hit with

15   a contempt petition where --

16               THE COURT:  Not out of this order.  You may be the

17   subject of a motion brought by Mr. Dell'Osso, if that's his

18   name, that he has been released and you can't pursue it.  I

19   don't know, but that's a separate -- you have a right to be

20   heard.  You have a right to prepare for that.  You have all

21   sorts of other issues that aren't present today.

22               This order would not result in any sort of issue

23   against Mr. Dell'Osso -- again, if I've got his name right.

24   This is simply dealing with following -- I approved a

25   settlement, the Circuit said I didn't have -- I shouldn't have

1    done it, I was in conflict with my own confirmation order, and

2    I didn't have the requisite jurisdiction.  All I'm doing is

3    addressing that issue.

4         MR. M. DONOVAN:  Uh-huh.  Well, the only -- is there

5    a way to add language that would say, nothing herein shall

6    affect any person's right to seek lawful discovery against

7    debtors and/or reorganized debtors and/or any released parties?

8         THE COURT:  I'll go halfway because we're only

9    dealing today with debtors and reorganized debtors.  And

10   Mr. Michael Donovan, not trying to make your life more

11   difficult.  I don't know anything about your litigation, and I

12   genuinely don't want to, but I'm going to be very careful

13   because I don't want to put my finger on the scale of something

14   that I don't understand, and I hope that you understand that.

15        MR. M. DONOVAN:  I do, Your Honor, and I just want it

16   on record and so that you know, the next time we're before you,

17   that we're not doing something amiss by continuing to proceed

18   against Mr. Dell'Osso.

19        THE COURT:  So --

20        MR. M. DONOVAN:  So that if we're in front of you

21   and -- you're not going to be surprised and I'm not going to

22   get sanctioned.

23        THE COURT:  Sure.  So can I give you -- so let me

24   be -- back when I was a practitioner, I represented most of the

25   plaintiffs' bar in Houston.  So let me give you just a

1  suggestion, and you do whatever you think is right.  There is

2  nothing that prohibits you from coming in and filing a motion

3  that says, this is what I propose to do -- because I have the

4  authority to issue advisory opinions under certain limited

5  circumstances.  There's nothing that would prohibit you from

6  coming in, filing a motion says, hey, this is what I want to

7  do.  You know, everyone say their piece or be quiet.

8           And that way, not only do you get the comfort of you

9  don't get dragged back here, you also have an order that you

10 can then show your judge if he or she is asked to grant relief

11 based upon a bankruptcy case.  And I used to do that simply

12 because -- and no disrespect intended to state court judges --

13 they don't understand the implications of all of the sections

14 of the Bankruptcy Code and plan injunctions.

15          And again, I say that that's what I used to do for

16 the folks I represented.  But you do what you think is right.

17 If you go pursue Mr. Dell'Osso, this order doesn't affect it.

18 The confirmation order may affect it.  The plan may affect it.

19 But this order doesn't affect it.  It only deals with the error

20 that I made in approving the settlement and recognizing the

21 effect of the discharge injunction.  Okay?

22          MR. M. DONOVAN:  I understand.

23          THE COURT:  All right.  Thank you.  Any other

24 comments?

25     (No audible response)

1          THE COURT:  All right, then.  Thank you, folks.  With

2    those modifications, I am going to grant the motion as set

3    forth in the order that we've interlineated on the record here

4    today.  That has been signed and it is off to docketing.

5          Gentlemen, thank you for the argument.  Please enjoy

6    your day.  You're all excused.

7          Those folks who are on -- well, it's 2:30.  I have

8    eight minutes.  Folks who are on for the 2:30, I'll see you in

9    eight minutes.

10          COUNSEL:  Thank you, Judge.

11          COUNSEL:  Thank you, Your Honor.

12          THE COURT:  Thank you.

13      (Proceedings concluded at 2:22 p.m.)

14                          *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

25

1  **C E R T I F I C A T I O N**

2

3          I, Lisa Luciano, court-approved transcriber, hereby

4  certify that the foregoing is a correct transcript from the

5  official electronic sound recording of the proceedings in the

6  above-entitled matter.

7

8

9  _____

10  LISA LUCIANO, AAERT NO. 327      DATE:  September 5, 2023

11  ACCESS TRANSCRIPTS, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25